VICKSBURG WATERWORKS COMPANY v. GUFFY PETROLEUM CO.

1. CONTRACTS. *Agreement to execute. Sale of quantities required.*

Where defendant agreed in writing with plaintiff and various other parties to enter into a written contract to furnish such quantities of fuel oil as should be required by the other parties during one year at a certain price, the agreement to execute a contract was binding and enforceable, although it did not state what quantity of oil was to be delivered to each of the parties purchasing.

2. SAME. *Estoppel.*

Where defendant entered into a written agreement to execute a contract to deliver to plaintiff and other persons at a certain price such fuel oil as they might need for one year, and in consideration of this agreement, plaintiff and the other prospective purchasers agreed to furnish a site for a tank and provide a right of way for a pipe line, and defendant demanded the conveyance of the tank site and right of way, and went into possession of them, not only not demanding the execution of the formal contract, but leading plaintiff to believe that defendant did not desire its execution, defendant was estopped to contend that the execution of the formal contract was a condition precedent to a right to recover for failure to furnish oil.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

The Vicksburg Waterworks Company, the appellant, was plaintiff in the court below; the Guffy Petroleum Company was defendant there. The defendant demurred to plaintiff's declaration, the demurrer was sustained, and, plaintiff not asking to amend, the suit was dismissed, and plaintiff appealed to the supreme court.

The declaration avers: That on the 3d day of December, 1901, defendant entered into a contract with plaintiff, the Vicksburg Fuel Oil Company, Lever Bros. Oil Mills, Limited, and the Vicksburg Railroad, Power & Manufacturing Company,

through their agent, the Vicksburg Fuel Oil Company, to deliver to plaintiff fuel oil in quantities not less than its needs between February 1, 1902, and February 1, 1903, delivered on railroad tracks at plaintiff's plant, in quantities not less than car lots, as needed by plaintiff, at a price of sixty cents per barrel of forty-two gallons; and as a further consideration plaintiff and the other parties to the contract agreed to furnish to defendant a tank site for a period of fifty years, and to provide a right of way for a pipe line to the Mississippi river; and, in order to insure an ample and regular supply of oil to plaintiff, defendant agreed to start immediately the erection of a tank on said site, and complete same as soon as possible; that in pursuance of said agreement plaintiff and other parties signed said agreement; that the tank site and right of way were provided for defendant according to the terms of the contract at the cost of plaintiff and the parties; that defendant accepted said tank site and right of way, but did not commence and complete the tank as it agreed to do, and it was not finished until ten or twelve days before the year within which the contract was to be performed had expired; that defendant at divers times before the year expired urgently requested plaintiff and the other parties to furnish the said tank site and right of way without at any time demanding or suggesting the execution in writing of the formal contract; that plaintiff and the other parties did furnish to defendant at their own expense, on February 4, 1902, the said tank site and right of way, and defendant accepted and went into possession of them without demanding or in any way suggesting the execution of the formal contract; that the conveyance of the tank site and right of way to defendant was a part of the consideration for the delivery of fuel oil to plaintiff; that the delivery of said oil to plaintiff was the sole consideration for the conveyance of the tank site and right of way to defendant, and when defendant demanded the conveyance to it of the tank site and right of way and accepted and went into possession of them after the time when said formal contract was to

have been executed, defendant led plaintiff to believe, and plaintiff did believe, that defendant did not desire its execution; and said acts were a waiver of its execution; that plaintiff has performed its obligations under said contract, and was at all times ready and willing to take fuel oil according to the terms of the contract, but defendant never delivered to plaintiff any oil between February 1, 1902, and February 1, 1903, nor at any other time.

The agreement that was signed by all the parties was made an exhibit to the declaration, and is copied in full in the brief of appellant's counsel.

*Hudson & Fox,* for appellant.*

This case is before the court on appeal from a judgment of the circuit court sustaining a demurrer to plaintiff's declaration. The following is the instrument on which this suit must stand or fall:

"This article of agreement made and entered into this 3d day of December, 1902, by and between J. M. Guffy Petroleum Company, of Beaumont, Texas, party of the first part, and Vicksburg Fuel Oil Company, of Vicksburg, Mississippi, of the second part, witnesseth:

"In consideration of the sum of one dollar and other considerations hereinafter mentioned, the said first party hereby agrees to execute contract to deliver to the individuals undersigned, of the second part, and the individuals undersigned, of the second part, agree to execute contract to take fuel oil in quantities not less than their needs, between February 1, 1902, and February 1, 1903, delivered on railroad track at respective points of consumption, not less than car lots, as needed, at a price of sixty cents (60c.) per barrel of forty-two gallons, said contract to be executed before January 1st.

"In consideration whereof party of the second part agrees to furnish free to party of the first part tank site located in Block

---

*This brief is published in full by direction of the court.

18, of Wharf & Land Company, 100 to 200 feet, more or less, as agreed, for a period of not less than fifty years, without cost to party of the first part, and also to provide right of way for pipe line and use of same to the river.

"It is further agreed that the party of the first part shall immediately start the erection of a steel tank thereon of suitable capacity to insure ample and regular supply of oil in all cases.

"Witness the signatures of the first and second parties this —————— day of ——————, ——————.

"Vicksburg Waterworks Company, by M. O. Crumpler, Manager; Lever Bros. Oil Mills, Limited, by F. Streuby, Manager; Vicksburg R. R., P. & Mfg. Co., by James Z. George, General Manager; Vicksburg Fuel Oil Company, by F. Streuby, President; J. M. Guffy Petroleum Company, F. W. Bullock, General Agent."

The declaration is upon the contract sued on according to its legal effect, and this written instrument is made an exhibit. The declaration is, in substance, that the said instrument was executed by the parties; that the Vicksburg Fuel Oil Company was acting as the agent of appellant in all this transaction and as the agent of the other corporations which entered into the agreement, and that this fact was known to appellee; that no formal contract was entered into on or before the 1st of January as stipulated; that after the first of January appellee urgently requested appellant and the other parties to the contract to furnish the tank site and right of way as agreed, without then or at any other time, either prior or subsequent to January 1st, suggesting or demanding the execution of the formal contract; that in accordance with this request of appellee, appellant and the other parties to the contract did furnish, on the 4th day of February, 1902, a tank site and right of way in pursuance of the contract, and that appellant paid its *pro rata* share of the cost of the site and right of way; that appellee accepted the conveyance of the lease of the tank site and right of way and went into possession of them; that these acts of ap-

pellee led appellant to believe that appellee did not desire the execution of the formal contract, and that it waived its execution; that appellee delivered oil to the other parties to the contract without requiring the execution of the more formal contract, and thus led appellant into the belief that it considered the contract set out above sufficient for all purposes. Then follow the averments of performance of its obligations under said contract, its readiness at all times to take the fuel oil as agreed and pay the contract price and perform its duties in all respects, demand upon appellee for the delivery of the oil, and appellee's refusal to deliver the oil or to carry out its obligations under the contract.

To this declaration appellee filed its demurrer containing many grounds, all of which may be condensed into the following five grounds:

1. The contract provided to be executed by the contract sued on does not appear to have been executed.

2. There does not appear to have been any breach of the contract sued on.

3. The matters set up in the declaration are not enforceable in an action at law.

4. If the plaintiff has a right of action, it is joint, and not several.

5. The declaration seeks to alter and amend the contract sued on by averment.

Our contention is that a valid and binding contract was entered into by plaintiff and defendant on the 3d day of December, 1901, under which, for a certain consideration and under a certain condition, defendant was bound to furnish fuel oil to plaintiff at the times and place and in the amount and for the price named in the second paragraph of the instrument signed by the parties on that date, which is set out in full hereinabove. The consideration moving from plaintiff to defendant was the conveyance to defendant of the tank site and right of way; and the condition, provided defendant should

desire its performance, was the execution of a contract as set out in the second paragraph of the above-mentioned instrument on or before January 1, 1902. We further contend that if the defendant had the right to insist on the execution of the formal contract on or before January 1st, as a material part of plaintiff's obligation, defendant waived this right by demanding the tank site and right of way during January, after the time named for the execution of the formal contract had passed, and that defendant, having accepted the tank site and right of way and being in the enjoyment of the fruits of its agreement with plaintiff, is estopped from denying its liability to furnish oil to plaintiff, which was the real consideration for which plaintiff contracted and furnished the tank site and right of way.

A discussion of our right of action as we conceive it, and as above set forth, will dispose of all that is material in the first, second, third, and fifth causes of demurrer.

The written instrument is, in the letter of its terms, a contract to enter into another contract of fixed terms. By signing this instrument all parties bound themselves, at least, to enter into a contract precisely as set forth in the second paragraph of the instrument; and this second paragraph, as it would appear in the formal contract when executed, is as follows:

"The said first party (Guffy Petroleum Company) hereby agrees to deliver to the individuals undersigned, of the second part (one of which is the Vicksburg Waterworks Company), and the individuals undersigned agree to take fuel oil in quantities not less than their needs, between February 1, 1902, and February 1, 1903, delivered on railroad track at respective points of consumption, not less than car lots, as needed, at a price of sixty cents (60c.) per barrel of forty-two gallons."

If either party had demanded the execution of such a contract before January 1, 1902, the other party would have been bound to sign it. Neither had any option to refuse to sign such

a contract, nor to alter, take from nor add to, its terms in any respect.

"On the other hand, an agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be if·executed. If, therefore, it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed upon, and that a part of the mutual understanding is that a written contract embodying these terms shall be drawn up and executed by the respective parties, this is an obligatory agreement." *Pratt* v. *Hudson River R. Co.,* 21 N. Y., 307; 9 Cyc., 282, and note 99, under which are cited a great number of cases; 7. Am. & Eng. Ency. Law, 140, and note 2.

"So also a stipulation to reduce a valid contract to some other form does not affect its validity, and the stipulation may not be used by either of the parties for the purpose of imposing upon the other additional burdens or obligations or of evading the performance of any of the provisions of the contract." 1 Beach Mod. Law of Contr., sec. 2 and note thereunder; *Drummond* v. *Crane,* 159 Mass., 577 (35 N. E., 90; 38 Am. St. Rep., 460; 23 L. R. A., 707).

Almost invariably when this question of an agreement to execute a formal contract, the terms of which are all agreed upon, has come before the courts for decision, it has been either upon an oral agreement with an oral stipulation that the agreement shall be reduced to writing in one instrument, or the agreement has appeared in letters, telegrams, etc., setting out the proposition by one of the parties and its acceptance by the other, with a stipulation or understanding that the contract shall be reduced to writing in one formal instrument and executed by the parties. We have found, after an exhaustive search through the law libraries here in Vicksburg, only one

case "on all fours" with this case—that is, where the written instrument was, in the letter of its terms, a contract to enter into another contract of fixed terms; that case of *Drummond* v. *Crane,* cited above, and we shall refer to it hereafter.

In some cases it was found that the parties intended not to be bound until they should have signed the formal contract contemplated, not closing the contract at the time they agreed that it should be put in writing. In other cases it was found that the minds of the parties had met, that a proposition complete in all respects had been made and accepted, binding the parties, and that the reduction of the agreement to a formal writing and its execution was not intended by the parties to be a condition precedent to the completion of the contract, and, consequently, that the parties were bound from the time they entered into the agreement. In other words, in the first class of cases the parties had agreed expressly or impliedly that there should be no contract to which either could hold the other until its terms were reduced to writing and subscribed by the parties. In the second class of cases the understanding that there was to be a formally executed contract was merely one of the several stipulations in a contract which both parties had bound themselves to perform. We think these two broad classes cover all the cases, and that the case before the court falls into the second class.

Necessarily the parties agreed that appellee should furnish oil to appellant at the price of sixty cents per barrel, in quantities not less than appellant's needs, not less than car lots, on the nearest railroad track, else appellee would not have bound itself to execute a binding contract to furnish the oil. The parties bound themselves to bind themselves to furnish the oil, on the one hand, and take it, on the other, on the terms named, and neither party could escape the obligations which were to be written into the contract before January 1st, except with the consent of the other party. The formal contract to be executed before January 1st was merely one link in the chain

which bound the parties to those obligations. The chain was none the less strong because it contained this one link more than the obligations of other contracts are composed of. If appellant had demanded of appellee the execution of the formal contract before January 1st, and appellee had refused, appellant could have compelled specific performance in a court of equity, and then have recovered damages for the refusal of appellee to deliver oil as agreed. Or, appellant could have sued in a court of law for the breach of appellee in refusing to execute a contract before January 1st, and the measure of damages would have been the same exactly as if specific performance had been first compelled and suit brought for the breach in the failure to deliver the oil. *Pratt* v. *Hudson River R. Co.,* 21 N. Y., 307.

Let us put ourselves in the places of those parties when they were negotiating this contract and see exactly what they did. Before they bound themselves to execute a contract before January 1st, they had to discuss what that formal contract should be—to agree upon all its terms. Proposals were made, on the one hand, and accepted, on the other. The minds of the parties met and assented to the proposition that appellant and the other corporations acting with it should furnish to appellee a tank site in Block 18 of a certain survey, of certain dimensions, and a right of way to the river for a pipe line, and that in consideration thereof appellee should furnish oil to appellant and the other corporations, parties to the contract, upon the terms set out in the second paragraph of the written instrument set out in the declaration. Then, after these things had been agreed upon, a further proposition was made on one side, and accepted on the other, that the contract should be reduced to writing before January 1st. This last stipulation, that the contract should be reduced to writing and executed before January 1st, was itself put in writing and signed in order to bind the parties then and there to execute the formal contract, in order, in turn, to bind them to deliver and receive oil on the terms

agreed upon. This, of inevitable necessity, was the order in which the negotiations were carried on and the agreement made. The instrument signed by the parties could not have been executed until the minds of the parties had met in mutual and binding agreement upon the terms upon which the oil was to be delivered and received.

What was the consideration for which the Vicksburg Waterworks Company and the other Vicksburg corporations agreed to furnish the tank site and right of way to appellee? Was it the intrinsic value of the paper and ink which was to be the evidence of the contract to be executed before January 1st? We do not raise fruits for their skins nor gather nuts for their shells. Appellant contracted for a financial benefit, the profit in the use of oil as fuel instead of coal. We say, therefore, that we are not declaring upon this one stipulation, to execute the formal contract, alone of the many stipulations of the contract actually entered into. We are declaring upon the whole contract. The stipulation written and signed that the contract should be formally executed on or before January 1st was the most trivial part of the contract on which we are suing, and this trivial stipulation was waived by the parties.

If it should be objected then that the contract sued on is an oral contract within the statute of frauds, the answer is that this signed stipulation is a sufficient memorandum in writing, for it sets out exactly every term of the contract, from which there could have been no variation if the formal contract contemplated had been executed. When this point was presented to the court below the learned judge held that a contract cannot be partly in parol and partly in writing. We are convinced that this was merely a *lapsus memoriae.* There was, if we remember correctly, an old common-law rule of pleading that contracts partly in parol and partly in writing must be declared on as parol contracts; but this rule could not have existed if parties were not allowed to make contracts partly in parol and partly in writing. The rule that a written contract may not

be varied by parol evidence has no reference to the making of contracts. That rule is really a rule of substantive law that when parties have reduced their contract to writing, what is written is the contract itself, and parol evidence of something else is wholly irrelevant to the issue.

"An agreement may be partly in writing and partly by word of mouth. A contract may be in writing as to one party and oral as to others, as where a person makes his offer in writing and the other party accepts orally, or *vice versa.*" 9 Cyc., 229, and note 6.

"The general rule which excludes parol evidence when offered to contradict or vary the terms, provisions, or legal effect of a written instrument, has no application to collateral undertakings or cases in which the written instrument was executed in part performance of an entire oral agreement. . . . Where the original agreement is partly in writing and partly verbal, the rule which rejects parol evidence in respect to written contracts has no application." 1 Beach Mod. Law of Contr., sec. 31.

It is true that under the statute of frauds we must declare upon the contract as it is shown in this written agreement, but we can declare on the contract according to its legal effect; and we do most earnestly insist that a proposal was made, on the one hand, to furnish oil to appellant on the terms set out, in consideration that appellant and the other corporations that signed with appellant should furnish the tank site and right of way (or *vice versa*); that this proposal was accepted, on the other hand; that the parties' minds met in binding contract then and there; that the sole consideration for which appellant agreed to furnish the tank site and right of way was the profit to be gained by using appellee's fuel oil; that the parties further stipulated that this contract should be formally executed, which was the least important part of their agreement; and that this is the sole conclusion—the inevitable conclusion—to be drawn from the written agreement in the declaration. We must con-

strue this writing so as to give effect to the intent of the parties as it appears there, and what their intent was is plain. The parties on September 3, 1901, bound themselves none the less securely because they chose to put only one stipulation of their agreement into writing.

This least important stipulation which the parties put into writing was one that could be waived by the parties, and one which either party is estopped, by accepting benefits under the contract from the other party, from insisting on in defense to an action for damages for breach of the contract.

"And plaintiff avers that at divers times during January, 1902, after the time agreed on for the execution of the formal contract had passed, defendant urgently requested plaintiff and the other parties to the said contract set out in exhibit 'A' to furnish the tank site and right of way to the river as agreed without at any time demanding or even suggesting the execution in writing of the formal contract; and in pursuance of the agreement set out in exhibit 'A,' at the said urgent requests of defendant, plaintiff and said other parties did furnish to defendant at their own cost and expense, on February 4, 1902, the tank site and right of way to the river, and defendant accepted and went into possession of them without demanding or in any way suggesting the execution of the said formal contract. And plaintiff avers that at no other time, either before or after January 1, 1902, which was the time agreed upon when the said formal contract was to have been executed, did the defendant ever request, demand, or suggest the execution of said formal contract."

What constitutes a waiver? What estops a party from denying a contract?

It may be the law, though we do not believe it is, that appellee did have the right to rescind its contract after January 1, 1902, on the ground that appellant had not offered to execute the formal contract; but appellee waived this right, and is now estopped from setting it up in defense to this suit.

The following are a few of the cases in which the courts have held that the fact that the parties agreed to enter into a more formal contract embodying an agreement between them does not prevent the agreement from taking effect from the time it is made, even though the formal contract is never executed:

In *Lawrence* v. *Ry. Co.,* 84 Wis., 433 (54 N. W., 797), the court said: "But it is also argued that because plaintiff ·in his letter of December 13th said, 'I will be down the first of the week and make out a contract,' it is evident he did not intend or suppose that such letter perfected a contract for the shipment of the logs, binding upon both parties. Why not? True, he contemplated the execution of a more formal written contract, but it does not appear that either party contemplated the insertion therein of any stipulation upon which their minds had not already met, and which was not substantially inserted in the two letters. Neither does it appear that either party believed any further writing was necessary to create a contract between them. Certainly the plaintiff did not, for without any further writing he proceeded to execute the contract expressed in the two letters on his part, and demanded its execution by the railway company. It also very satisfactorily appears that the railway company was of the same opinion, for in the letter of Mr. Wellington of December 20th he calls for information as to when plaintiff desired to begin shipping logs, how many cars he was going to put into the service, how many logs he would want to ship per day, and the amount to be shipped. Some of these inquiries, especially that as to 'how many Paine lumber cars are you going to put in the service?' are quite inconsistent with the idea that Mr. Wellington did not suppose a contract existed." See also *Cohn* v. *Plumer,* 88 Wis., 622 (60 N. W., 1000); *Green* v. *Cole* (Mo. Sup.), 15 S. W. Rep., 317 (s.c., 24 S. W. Rep., 869); *Allen* v. *Choteau* (Mo. Sup.), 14 S. W. Rep., 869.

*Stover* v. *Flack,* 30 N. Y., 64, was an action by administrators to recover money expended by intestate for the use of de-

fendant. Intestate had entered into an arrangement with defendant whereby intestate was to subscribe for certain stock, one-half for the use of defendant, upon condition that defendant pay intestate interest on one-half of the money so expended and other conditions. It was further provided that the contract should be reduced to writing and executed formally by the parties, but this was never done. The court, by Davies, J., said: "The omission or the unwillingness of the party to reduce the same to writing did not terminate the obligation which the agreement actually made created." And the court, by Mullin, J., said: "It is said that the contract as to stock was never binding, because by its terms the agreement was to be put in writing, and it was not. Conceding that the defendant might have insisted on the performance of this condition, it was competent for him to waive it; and he seems to have repeatedly recognized his liability on the contract, although it had never been reduced to writing and signed."

*Sanders* v. *Pottlitzer Bros. Fruit Co.,* 144 N. Y., 209 (29 L. R. A., 431), was a suit for damages for alleged breach of a contract to purchase apples. The contract was embodied in correspondence between the parties by letter and telegrams, and it was understood and referred to several times that the contract was to be reduced to writing and executed by the parties. This was never done, defendant insisting on the insertion of new terms and conditions when the contract was written out and presented for execution by plaintiff. The court held that the contract was complete without the execution of the formal contract, and that plaintiff could recover. It will be noted that the breach assigned was a failure to deliver the apples, and not the refusal of defendant to execute the contract in writing as it was made in the correspondence. It is an instructive case.

In the case before the court the parties acted on the agreement without suggesting or seeming to think that the formal execution of another written contract was necessary, while in *Sanders* v. *Pottlitzer* the agreement does not seem ever to have

been acted upon. Under that case surely the agreement be-
tween the Vicksburg Waterworks Company and the Guffy
Petroleum Company will be enforced after it has been acted
upon by both parties and the Guffy Petroleum Company has
received and is still in the enjoyment of the fruits of the agree-
ment.

"When parties make and sign a written memorandum of
agreement with the understanding that a formal contract em-
bracing the same stipulation is thereafter to be written out and
executed, if they afterwards act upon the memorandum, it will
be treated as a valid and binding contract, although never writ-
ten out in a formal manner." *Riggins* v. *Missouri River, Ft.
S. & G. R. Co.,* 73 Mo., 598.

"If the terms of the contract which is to be reduced to writ-
ing, but never is, are agreed on, parties receiving benefits under
it will not be heard to say that the understanding that it was
to be reduced to writing was not carried out, for the purpose
of avoiding the obligation placed on them by it." *Miller* v.
*McManis,* 57 Ill., 127.

"Although one of the parties notifies the other that he will
not perform the contract unless it is reduced to writing, he
cannot, after he has gone on and performed a large part of the
work, repudiate it and recover a higher compensation, although
the notice to reduce to writing was not complied with." *Paige*
v. *Fullerton Woolen Mills,* 27 Vt., 485.

In *Drummond* v. *Crane,* 159 Mass., 577 (35 N. E., 90; 38
Am. St. Rep., 460; 23 L. R. A., 707), suit was brought upon
the following contract: "New York, June 11, 1888.   M. J.
Drummond—Dear Sir: I hereby agree to enter into a formal
contract with the Housatonic Water Company, when organized,
binding myself to take at least seven hundred and fifty dollars
($750.00) worth of water per annum for a period of ten years,
on the following basis: Water for manufacturing purposes,
12½ cents per 1,000 gallons; hydrants, $40.00 per annum each;
private dwellings, one tap for one family, $8.00 per annum.

In the construction of these works they are to commence at long pond, with a 14-inch pipe, and continue with a 12-inch pipe, then reducing to a 10-inch pipe, then to 8-inch to the village, and using 6-inch and 4-inch distribution pipes.   C. R. Crane." This was accepted, and plaintiff built the waterworks as agreed, but the formal contract agreed upon was never written and executed. The opinion of the court was delivered by O. W. Holmes, J., who is now on the supreme bench of the United States. After discussing the contract as if it had not been in terms to enter into another formal contract, but had been in terms to do what that formal contract was to provide for, he dismissed the question of the effect of the agreement that another formal contract was to be entered into with the following words: "The considerations which we have put forward are not affected by the fact that the contract sued upon contemplated another more formal contract. That is merely an additional wheel in the machinery." And he held that plaintiff could recover the profits that he would have made if defendant had carried out his agreement to take the water. This case is "on all fours" with the instant case.

Setting up a breach of a contract in defense to a suit on a contract is in effect a rescission, and the rule is the same as if rescission is sought in equity. Cases in equity are cited in actions at law, and *vice versa.*

"One who receives the benefits of substantial performance of a contract, and retains them, after a technical default in the performance by his adversary, until it is impossible to put the other in the position in which he was when the contract was made and when the default occurred, cannot entirely defeat an action for the specific performance of a contract, or an action for the price named in the agreement, on the ground that the plaintiff has failed to completely perform the contract on his part. When a contract has been partially performed, and one of the parties to it makes default, the other has the choice of

remedies. He may, and he must, rescind or affirm the contract, but he cannot do both. If he would rescind it, he must immediately return whatever of value he has received under it, and then he may defend against an action for specific performance or for the price of the property (if the agreement was a contract of sale), and he may recover back whatever he has paid or delivered under it. On the other hand, he may—and if he retains the benefits, he does—affirm the contract, and in that case he can maintain a suit for specific performance against his adversary, or an action for damages for failure to perform, or he may, if opportunity occurs, offset those damages against the amount he has agreed to pay under the contract. He cannot, however, while he retains the benefits of a substantial performance, totally defeat an action for the price which he has agreed to pay, or for the specific performance of the contract on his part, on the ground that the plaintiff has not completed the performance required of him by the contract. He cannot at the same time affirm the contract by retaining its benefits and rescind it by repudiating its burdens. *Hunt* v. *Silk,* 5 East, 449; *Hammond* v. *Buckmaster,* 22 Vt., 375; *Brown* v. *Witter,* 10 Ohio, 143; *Dodsworth* v. *Iron Works,* 13 C. C. A., 552, 557 (66 Fed. Rep., 483); *Swaim* v. *Seamans,* 9 Wall., 254, 272; *Beck* v. *Bridgman,* 40 Ark., 382, 390; *Andrews* v. *Hensler,* 6 Wall., 254, 258; *Conner* v. *Henderson,* 15 Mass., 319, 321; *Teter* v. *Hinders,* 19 Ind., 93; *Howard* v. *Hayes,* 47 N. Y. Sup. Ct., 89, 103; *Welsh* v. *Gossler, Id.,* 112; *Underwood* v. *Wolf,* 131 Ill., 425 (23 N. E., 598); *Brown* v. *Foster,* 108 N. Y., 387 (15 N. E., 608); *Vanderbilt* v. *Iron Works,* 25 Wend., 665; *Lyon* v. *Bertram,* 20 How., 149, 153-155; *Clark* v. *Steel Works,* 3 C. C. A., 600 (53 Fed. Rep., 494, 499); *Voorhees* v. *Earl,* 2 Hill, 288, 294; *Barnett* v. *Stanton,* 2 'Ala.', 181; *Churchill* v. *Holton,* 38 Minn., 519 (38 N. W., 612); *Treadwell* v. *Reynolds,* 39 Conn., 31; 21 Am. & Eng. Ency. Law, 557, note 2. The reason of the principle is that the retention of the benefits of substantial performance after default

is utterly inconsistent with the position that the default has released the party who has received those benefits, so that he is not bound to perform his part of the contract.   It is a silent notice that performance will be required of the defaulter, and will be made by the recipient of the benefits.   The retention of the rights or properties deprives the defaulting party of all use of them, when, if they were reconveyed to him at once upon default, he might immediately sell them to another for their value or use them himself to his own advantage.   When, therefore, one has retained such property, or the benefits derived from such a contract, without any claim that default has been made, or any notice of intention to refuse performance, for so long a time after the default that the defaulting party has been deprived of a substantial part of their value or their use, it is unjust and inequitable to permit the recipient of the benefits to totally defeat an action for the contract price.   The just rule is that the contract must then stand, substantially performed, notwithstanding his technical default, and that the amount of the recovery will be measured by the contract price, less the damages sustained by the defendant from the failure of the plaintiff to complete the performance on his part.   This rule applies to executory contracts of all kinds—to contracts for the exchange, for the leasing, and for the sale of real estate; to contracts for the manufacture and sale of machinery and goods, and to contracts for the sale of personal property.   *German Sav. Inst.* v. *De La Vergne Mach. Co.,* 70 Fed. Rep., 146, 149, 150. And see *Kaufman* v. *Raeder et al.,* 47 C. C. A., 278 (108 Fed. Rep., 171; 54 L. R. A., 247).

Both of the last two cases were decided by Judge Sanborne, and no better briefs could be written upon the right of a party to a contract to rescind, or defend an action for damages or specific performance, on the ground of a breach of contract by the other party, when a substantial performance has been had, or benefits received and retained.   How much stronger the case before the court!   The Guffy Petroleum Company demanded

that the Vicksburg Waterworks Company furnish the tank site
and right of way after the breach of the contract which the
Guffy Petroleum Company now sets up as a defense. The
Vicksburg Waterworks Company did furnish the tank site and
right of way, which is certainly the substantial consideration
for which the Guffy Petroleum Company contracted. The
Guffy Petroleum Company accepted this substantial perform-
ance and is now in the full enjoyment of its lease for fifty
years of the tank site and right of way. It is shocking to all
sense of right and justice to say that this appellant has no right
of action against appellee. Appellee cannot induce appellant
to fulfill its obligations at great cost and on the faith of a
contract between the two, and then deny that there is a binding
contract. 24 Am. & Eng. Ency. Law, 645, 646, and notes.

In *Cocke et al.* v. *Rucks,* 34 Miss., 105, suit was brought in
the circuit court on a note given in payment for a slave. The
defense was that the negro was "unsound; that he was repre-
sented by the auctioneer as being sound; and that the sale,
which was made under an order of the probate court, was never
confirmed by that court; and, finally, that the guardian (who
made the sale) had no title. . . . There is no offer to
return the slave or averment that such offer was ever made.
. . . If the sale be either void or voidable, and the purchaser
wish to take advantage of the latter, he had no right to hold
the property a moment. . . . The purchaser cannot so far
consult his own interest as both to retain the property and with-
hold the debt." See also *Martin* v. *Broadus,* 1 Freeman's Chan-
cery Reports, 35; *Commercial Bank of Manchester* v. *John
C. Lewis et al.,* 13 Smed. & M., 226.

In *Gullich* v. *Alford,* 61 Miss., 224, the rule is stated thus:
"The *status quo* cannot be restored. There has been an absolute
enjoyment of the fruits of the enterprise by the appellee as
partner, and he cannot now say that he has so enjoyed them
intending only to be conditionally bound by their reception."

This case also recognized the rule that where parties enter

into an agreement, with a stipulation that the agreement is to be reduced to writing and formally executed by the parties, the stipulation will be waived by acting under the agreement without first executing the written contract. The facts of the case were that Alford had contracted to buy a half interest in a mill from Gullich. They were to enter into a partnership, and the contract was to be executed in writing. They operated the mill, divided the profits, and Alford did considerable work repairing the mill, and allowed a debt due him from Gullich to be applied to the payment for his half interest in the mill. After several attempts to agree upon the terms of the written contract to be entered into, but failing to agree, Alford elected to abandon the contract of purchase, and brought this suit to recover the debt due him from Gullich and to recover the value of his work repairing the machinery of the mill. Among other things, the court, by Cooper, J., said: "  . . . It was assumed in the court below that the appellee was entitled to the writing as a part of his contract, and that its execution was a condition precedent to a consummation of the contract, unless it had been waived by him. This was asserted by the appellee, and seems not to have been controverted by the appellant, who depended upon the theory of a subsequent waiver by the appellee. By their verdict the jury have in effect found that though the appellee was let into possession of the property, such possession was not accepted by him as an execution of the sale; that he had not waived the written contract, and that the execution of such writing was a condition precedent to the consummation of the sale. If, as the jury have found, the parties made the writing of the essence of the contract, and the appellee did not receive possession of the property as in execution of the contract, it would seem that he had the right to abandon it on the willful failure and refusal of the appellant to comply with its terms." Citing *Moake* v. *Nicholson,* 19 C. B. N. S., 90; *Falk* v. *Fletcher,* 18 *Ib.,* 403; *Joyce* v. *Swan,* 17 *Ib.,* 84; *Shepherd* v. *Harrison,* L. R. 4 Q. B., 493.

Upon the question of waiver generally we cite the following Mississippi cases:

"A waiver is defined to be the intentional relinquishment of a known right, and it implies an election of a party to forego some advantage which he might have, at his option, insisted upon." *Knights of Pythias* v. *Quinn,* 78 Miss., 525, 531.

In *Davis* v. *Hoopes,* 33 Miss., 173, a party was held to have waived his right to object to the form of a judgment after acquiescing in its form for many years, during which he was carrying on litigation in the chancery court in an attempt to defeat the judgment on other grounds.

In *Goodall* v. *Stewart,* 65 Miss., 157, the seller of goods, with knowledge of the fraud of the purchaser by which he was induced to sell, attached and sued to recover the price, and it was held that he thus waived the fraud and his right to rescind the sale and recover the goods.

In *Moak* v. *Bryant,* 51 Miss., 560, the purchaser of land was held to have waived objection to the sufficiency of a deed by failing to object to it when it was tendered and payment demanded, and refusing to accept the deed and pay on the ground that he had not the wherewithal.

In *Sullivan* v. *Board of Supervisors,* 58 Miss., 790, Sullivan appeared before the board and urged specific objections to the report of commissioners appointed to lay out a public road over his land and across a bridge built in violation of his alleged franchise to run a ferry, and it was held that he waived all objections which might have been urged, but were not.

"To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as grounds of avoidance, is to attempt a fraud." *Insurance Co.* v. *Randle,* 81 Miss., 720, 724.

We will close this part of our argument with the following proposition:

When appellee demanded that appellant furnish the tank site and right of way, what was appellee's intention? Appellee

had full knowledge that the time for the execution of the formal contract had passed, and that it had not been executed. Did appellee intend to furnish the oil upon the agreed terms when it demanded, accepted, and went into possession of the tank site and right of way? If so, then we think it could have been nothing else in the world but a full waiver. Did appellee intend to take advantage of the fact that the formal contract had not been executed? If so, then appellee intended to perpetrate a gross fraud upon appellant. Even after appellee went into possession of the tank site and right of way it never intimated that it wanted the formal contract executed, and such a desire on the part of appellee was never heard of until after the year during which the oil was to have been delivered had passed, and appellee found that it would be necessary to have some excuse for not paying appellant what appellant is entitled to for the consideration of the tank site and right of way.

Appellee, with full knowledge that no contract had ever been entered into on or before January 1st, as stipulated in the agreement, could not demand and accept the consideration moving from appellant without intending either to waive the formal writing or to defraud appellant, and appellee may gore itself on either horn of the dilemma it prefers.

This leaves for discussion the ground of demurrer that the right of action is joint, and not several.

Appellant has no interest whatever in the furnishing of oil to the other parties, and, moreover, appellee did furnish oil as agreed to the other parties (see the declaration). Those other parties have no right of action whatever against appellee for appellee's failure to deliver oil to the Vicksburg Waterworks Company. They were not damaged by this breach of the contract on the part of appellee. Perhaps it is true that appellee could have insisted on the joint execution of the contract on or before January 1st if it had desired to do so; but it is too late now.

"Where the contract was made with several persons whose legal interest is joint, all of such persons as are living must join in an action for its breach; but if the interest of each is several and distinct, each must sue alone." Shipman, Common Law Pleading, 134.

"The rule is well settled by the decisions that although a man covenant with two or more jointly, yet if the interest and cause of action of the covenantees be several, the covenant shall be taken to be several, and each of the covenantees may bring his action for his particular damage, notwithstanding the words of the covenant be joint." 9 Cyc., 704 (III.), and note.

Even if the formal contract had been jointly executed, and appellee had refused to furnish oil to only one of the parties, that party alone would have been damaged, and none of the others would have had any interest in the damaged party's suit. Appellee waived the formal contract, furnished oil to the other parties, refusing to furnish oil to plaintiff alone, and plaintiff alone has any interest in this action.

*Dabney & McCabe,* for appellee.

It is not denied by us that a formal execution of a written contract is unnecessary where the terms of a contract are fully agreed upon and a formal agreement would be but a repetition of the one already entered into. 7 Am. & Eng. Ency. Law (2d ed.), 140, and note.

The alleged contract here involved was intended simply as a memorandum guaranteeing to these several parties the privilege of receiving a contract from the appellee to furnish them oil at sixty cents per barrel. It was clearly the intention and purpose of the parties that, as a condition precedent to any rights under that agreement, new and separate contracts with each party seeking the benefit of this contract should be entered into. The new agreement should set forth the quantity of oil to be taken by such contracting party, and when it should be delivered. In the memorandum of agreement filed with the declaration it is

specified that the "parties agree to" execute contract to take
fuel oil in quantities not less than their "needs, between Febru-
ary 1, 1902, and February 1, 1903." How much would have
been their needs, and when should it be delivered? This was
a matter which was to be set out and specified in the agreement
to be made. What would be the needs of one would not be the
needs of another, and it was contemplated that there should be
some specification as to the quantity of oil to be taken by each,
when it was to be delivered, etc. This memorandum of agree-
ment does not go into these details, and they are left for agree-
ment in the contract to be made thereafter.

The parties had a right to make an agreement stipulating that
another writing should be entered into if they wanted to do so,
and they did it. Is there any law which forbids such a con-
tract? The execution of the contract was made a condition
precedent to any other performance under the preliminary
agreement. There was no hardship imposed by its terms on
appellant. It had only to ask for the contract and tender per-
formance. It did neither.

WHITFIELD, C. J., delivered the opinion of the court.

Learned counsel for appellee in this court practically aban-
doned all grounds urged in support of the demurrer to the
amended declaration except this ground: That it was necessary
that there should be separate contracts to show in what quanti-
ties fuel oil was to be delivered to each of the corporations buy-
ing, and showing at what times such oil was to be delivered.
This is an inaccurate view of the contract. It was simply im-
possible to have stated in any contract exactly how many barrels
of oil any one of the corporations would have needed, or the
times at which the oil needed should be delivered. This was
not practically determinable, and it would have been wholly
impossible to have put any fixed number of barrels in the con-
tract or any stated dates for their delivery. What the agree-
ment stipulated was that appellant and the other corporations

would take all the oil their plants required—that is to say, that they would buy all the oil each needed from the appellee. How much would be measured by their need, and delivery would also be controlled by their need. This agreement to execute a contract is in itself a perfect contract, and just as binding as a contract agreed to be executed could possibly have been. See the authorities collected in the remarkably clear and able brief of counsel for appellant, which the reporter will publish in full. If it should be held that the execution of the contract agreed to be executed prior to January 1, 1902, was a condition precedent in this case, the averments of the declaration abundantly show a situation which completely estops appellee to make defense on the ground of the failure to execute the agreed instrument.

*Judgment reversed, demurrer overruled, and cause remanded.*