CARTER *et al. v.* COLLINS.[*]

(Division A.　May 28, 1928.)

[117 So. 336.　No. 27095½.]

(1)

*Corpus Juris-Cyc. References: Contracts, 13CJ, p. 748, n. 59; p. 793, n. 95; Evidence, 22CJ, p. 1157, n. 50; Trial, 38Cyc, p. 1362, n. 70.

*W. S. Welch, Ellis B. Cooper, Roy P. Noble,* and *James T. Welch,* for appellants.

*B. F. Carter, F. B. Collins,* and *Jeff Collins,* for appellee.

McGowen, J. W. M. and M. A. Carter, plaintiffs in the court below and appellants here, filed their suit in the circuit court of Jones county, to enforce a materialmen's lien on the house and lot of the defendant, Jeff

Collins, appellee and cross-appellant in this court, for the sum of three hundred ninety-four dollars and sixty-six cents. The declaration was in two counts. The first count was based on a letter written by the appellants to the appellee, Collins, offering to furnish material for a roof upon his dwelling and the labor necessary to put same on for the sum mentioned above, upon which the appellee, Collins, wrote the word, "Accepted," and signed his name. The second count, or common count, sought to enforce the lien for the value of the roof and labor necessary to put it on. The first count alleged that the contract had been fully complied with, and the second, or common count, that the material and labor had been furnished, and so furnished was worth three hundred ninety-four dollars and sixty-six cents. The letter, or written contract, is as follows:

"Laurel, Miss., 2/3/27.
"Invoice No. 3648.
"Mr. Jeff Collins, City: Quotation to roof your house on Waynesboro Road:

| | |
|---|---:|
| 22.57 squares, more or less, No. 60 12-12-1/8 @ $11.75, duplex, same color as on Baptist Church, Kingston ...................... | $265.20 |
| Ridge furnished complete (nails and brads free) ............................... | 43.25 |
| Starters .............................. | 18.50 |
| | $326.95 |
| "To amount mechanics' labor for applying the small shingle No. 60 @ $3 per square ..... | 67.71 |
| | $394.66 |

"10-year guarantee from Johns-Manville Company.
"W. M. CARTER.
"Accepted: Jeff Collins."

The appellee, Collins, filed an answer to the declaration, pleading the general issue and a failure on the part

of the appellant to comply with his contract in that the contract called for a "ten-year guarantee from Johns-Manville Company" and such contract of guaranty had not been furnished in accordance with the agreement, and that there was an antecedent oral agreement to furnish a contract guaranteeing a waterproof roof that would not leak for a period of ten years. In the answer filed, there was no counterclaim set off, or recoupment set up, as a defense to the action, and there was no claim for damages to the house occasioned by leakage.

Plaintiff, in the court below, offered evidence that he had furnished a roof of the character and quality of material called for in the written contract, with a written guaranty executed by Johns-Manville Company and himself. The written guaranty was tendered to the appellee and payment demanded, which demand was refused because the appellee, Collins, contended that the written guaranty did not provide a guaranty that the roof would be waterproof for a period of ten years. The Johns-Manville Company's guaranty stipulated that it would furnish, free of charge, such new material as might be necessary to remedy defects caused by the failure of their material. The appellant, Carter, testified that the written guaranty was the one usually issued by the Johns-Manville Company, while the appellee, Collins, testified that the guaranty was not the one which the appellant agreed to furnish him, but there was to be an absolute guaranty that the roof would not leak for a period of ten years; and he signified his willingness to pay the contract price on the execution of the guaranty in the form for which he contended.

Appellee further testified that the appellants, the Carters, would not furnish the material unless they were allowed to put the roof on; and that for that reason he had to pay his contractor three dollars per square foot for putting the roof on in accordance with the building contract; and that in order to get the ten-year guaranty

against leakage, he also had to pay the appellants, the Carters, for the same, three dollars per square foot, for putting the roof on.

White, the building contractor, testified that the appellee, Collins, deducted one dollar fifty cents per square foot from the building contract; so according to the appellee's theory, he paid more than sixty dollars for the guaranty, while according to White's testimony, he paid considerably less, or about thirty-six dollars for the guaranty.

After both sides had rested, and while the court was deliberating on the instructions, the appellee, Collins, asked to reopen the case and was permitted to do so over the objection of the plaintiffs, and also to offer proof of a recoupment consisting of the cost of repairs to the walls of his building, such as lathes, plasterings, painting, etc., caused by leaks in the roof which roof was repaired by the plaintiffs several times because of such leaks. This damage was estimated by the appellee's witness to be from one hundred twenty-five to one hundred fifty dollars.

The appellee, Collins, did not offer to show what damage, if any, there was to the building, but only to show the cost of the repair of damage to the walls of the building.

The appellants, the Carters, objected to all the oral testimony given by the appellee, Collins, with reference to the guaranty, maintaining that the contract was in writing and could not be contradicted, altered, or varied by oral evidence.

When the court below permitted the appellee, Collins, to reopen his case, there was no amendment to his answer asked for, and none made, and no plea of recoupment or notice of recoupment, or any such defense, contained in the answer. The court below granted an instruction to the appellant, directing a recovery on the second count on *quantum meruit* and *quantum valebat* for value of

labor and material furnished, but in the same instruction used the words "contract price" as the basis of recovery, "subject to such damages capable of being estimated in dollars and cents as shown by the testimony to be deducted from the contract price unless the defendant had shown by a clear preponderance of testimony that there was no compliance with the contract by the plaintiffs." The court refused the peremptory instructions separately asked by the appellee, Collins, as to the first and second counts, and the case was submitted to the jury on the question of whether or not the appellee, Collins, had suffered damages by reason of plaintiff's failure to comply with the contract with respect to the leakage of the roof.

We have not set out the instructions, but only an analysis of the issues as reflected by them.

The appellants, the plaintiffs, filed their suit and demanded a lien in accordance with section 2584, Hemingway's 1927 Code (section 3062, Code 1906). The appellee, the defendant, filed an answer to the petition by virtue of section 2587, Hemingway's 1927 Code (section 3065, Code 1906), which section is as follows:

"The defendants, or any of them, by answer to the petition, may make any defense they may have against the demand of the plaintiff, and also any counterclaim against him touching the subject-matter of the suit. And should any defendant claim to have a lien upon the same property, for materials furnished or labor done thereon, he may present the same by his answer; and the cause shall be at issue without a replication, and the parties shall be confined at the trial to the *cause of action and defense set forth in the pleadings.*" (Italics ours.)

This section makes it mandatory that the appellee set up in his written answer or pleading all the defense relied on, and likewise a counterclaim. It stipulates that the parties shall be confined at the trial to the cause of action and defense set forth in the pleadings; and, in this case,

the defendant was permitted, over the objection of the plaintiff, to reopen his case and make proof of a recoupment by way of damages in the cost of the repair to his building, caused by leakage of its roof. This was manifest error. The pleadings did not authorize the appellee to offer this evidence without any plea filed or notice under the general issue of this defense, or partial defense to the cause of action.

There was contained in the answer matter which may be treated as a general issue plea, but this plea in no wise advises the plaintiff of the affirmative matter set up in the evidence by way of recoupment.

Section 541, Hemingway's 1927 Code (section 744, Code 1906), provides that any affirmative matter in avoidance of the cause of action, which by law may have been proved under the plea of general issue, must be set out in writing in a notice annexed to, or filed with the plea; otherwise, such matter shall not be allowed to be proved at the trial. This section narrows the scope and effect of the plea of the general issue; and every defense not merely consisting of a denial of the allegations of the declaration must be pleaded specially, or notice thereof given under the general issue. *Tittle* v. *Bonner*, 53 Miss. 578.

We think the authorities elsewhere are to the effect that notice in writing of a recoupment must be given by the defendant to the plaintiff before evidence of same may be offered. We pretermit the question of whether or not the court erred in permitting the reopening of the case in point of time, but there was no pleading filed, or any offer to file same, which authorized the procedure in this case. For this error, upon the direct appeal, this case must be reversed and remanded for another trial.

The appellant assigns as error the action of the court in permitting the defendant to testify as to what was meant by the Johns-Manville Company contract of guaranty, contending that the oral statements leading up to

the execution are merged into the contract, and that parol evidence is inadmissible to vary or contradict the terms of a written contract.

Let it be remembered that the language here under consideration is as follows: "ten-year guarantee from Johns-Manville Company."

In the court below, the appellant was permitted to introduce what he said was the Johns-Manville Company guaranty, which was in compliance with the written contract. Thereafter, the court permitted the defendant, orally, to give his version as to what the plaintiff told him the Johns-Manville Company contract was to be.

According to the undisputed testimony, Collins paid for this written guaranty, as a part of this contract, in order to secure a roof that was waterproof, an additional sum for putting on the roof. The written guaranty is different, altogether, from the guaranty contended for by Collins in his oral evidence. This evidence was in aid of the contract, and clearly defines the guaranty not embraced in the original contract, and not set forth therein.

In that state of case, parol evidence which did not vary nor contradict the terms of a written instrument could be resorted to in order to effectuate a written contract.

In the case of *Peacher* v. *Strauss*, 47 Miss. 353, this court held as follows:

"A simpler rule, perhaps, in most cases, in this, that evidence may explain but cannot contradict written language. . . ."

And, further:

"The law will not pronounce a contract incurably uncertain, and therefore null, until it has cast upon it all the light to be gathered, either from a collation of all the words used, or from all contemporaneous facts which extrinsic testimony establishes."

In Parsons on Contracts, p. 561, the same rule is stated.

The language quoted from the contract here under consideration clearly points to another document setting forth the Johns-Manville Company guaranty.

In the case of *Bowers* v. *Andrews,* 52 Miss. 598, the court held that when a written instrument is short and incomplete, parol proof is admissible to show the real meaning of the parties, not to prevail over the words of the instrument, but to give them force and operation.

The general rule, as stated in 9 Encyclopedia of Evidence, p. 350, par. D, is as follows:

"The rule that parol evidence is inadmissible to contradict, vary, add to, or detract from the terms of a written instrument does not exclude parol evidence showing the existence of an independent oral agreement as to any matter on which the writing is silent, and which is not inconsistent with its terms."

Lord ELLENBOROUGH, in *Jeffery* v. *Walton,* 1 Starkie, 267, having before him a suit for damages for not taking proper care of a horse hired by the defendant of the plaintiff, wherein the following memorandum was offered in evidence: "six weeks at two guineas, William Walton, Jr."—concluded that this memorandum was incomplete but considered it as far as it went, saying:

"The written agreement . . . merely regulates the time of hiring, and the rate of payment, and I shall not allow any evidence to be given by the plaintiff in contradiction of these terms, but I am of opinion that it is competent to the plaintiff to give in evidence suppletory matter as a part of the agreement."

In *Colbourn* v. *Dawson,* 4 Eng. Law & Eq. 378, the plaintiff wrote to the defendant:

"We are doing business with B, and require a guaranty to the amount of two hundred pounds, and he refers us to you."

Defendant wrote in answer:

"I have no objection to becoming security for B, and subjoin a memorandum to that effect."

The memorandum subjoined was:

"I hereby engage to guaranty to Messrs. Colbourn, iron-masters, two hundred pounds for iron received from them for B, as annexed."

Held, that these three documents should be read together, and that the words, "We are doing business," taken with the rest, showed that the consideration for the defendant's undertaking was that the plaintiff should continue to supply B with goods, and that there was, therefore, a good consideration.

So we conclude that it was proper for the court to permit evidence *pro* and *con* as to what terms of the guaranty were to be.

On the cross-appeal the defendant demurred to the declaration, because there was an effort to sue him upon a special contract in one of the counts, and on *quantum meruit* in another count. The court overruled this demurrer, and it is not pressed here that there was error in overruling the demurrer. The cross-appellant, however, contends that, having proved a special contract, the plaintiff should not have been permitted to prove under the common count the value of his services and material furnished to the defendant; and, in fact, as above noted, in the analysis of the court's instructions, the court permitted the case to go to the jury upon both counts. So we have a verdict rendered by a jury upon evidence uncontradicted as to a special contract, and upon *quantum meruit*. Plaintiff must stand upon one count or the other. He cannot be permitted to recover on both, or an admixture of both.

Counsel for cross-appellant relies upon the case of *Dermott* v. *Jones,* 23 How. 220, 16 L. Ed. 442, the reasoning of which is perfectly clear, but the facts there under consideration are in no wise similar to the facts of the case at bar. Counsel cites the case of *Morrison* v. *Ives,* 4 Smedes & M. 652, but in that case we find this announcement on this question:

"So long as a special contract exists in force, a plaintiff cannot resort to the common counts, unless he fail altogether in proving the special contract, and then it must be such a transaction as would entitle him to recover on the money counts, supposing there had been no special contract, but if there be any proof of a special contract he cannot recover," citing 4 Phil. Ev. 108 Am. Ed. 1839.

"On this state of facts the court instructed the jury that the plaintiff was at liberty to abandon the special contract set out in the declaration, and might recover on the common counts," etc.

"If the court had added to the charge that Ives was entitled to recover if Morrison had put an end to the contract, then it would be well enough. But the charge is in general terms, that he had a right to abandon the special contract, and recover on the money counts. The abandonment must precede the action, for if the contract be in force, it cannot be abandoned at the trial," etc.

In the instant case there was no abandonment of the special contract, but the issue was submitted to the jury both on the special count and on the common count. Where there is a contract, parties may not abandon same and resort to *quantum meruit*. *New Orleans, Jackson & Great Northern Railroad Co.* v. *Pressley Greer Co.*, 45 Miss. 66.

Counsel for appellee also cite 40 Cyc. 2824, which does not sustain his position, but is, to the contrary, in the following language:

"Where a valid express contract for the performance of work and labor or the rendition of services is entered into, the general rule is that recovery cannot be had on a *quantum meruit*, but must be had, if at all, under such contract."

In *Drake* v. *Surget*, 36 Miss. 458, we find this statement of the rule:

"Where the plaintiff declares on a special contract, and also files the common counts if at the trial he proves a

special agreement, but different from that laid in his declaration, the plaintiff cannot recover on either count. He cannot recover on the special count, because of the variance between the contract alleged and the contract proved, nor can he recover on the common counts, because there was a special contract,'' citing 1 Str. Bull. N. P. 139, 6 Term. R. 325.

The court should have held the plaintiff to his special contract pleaded and proved, in fact, not disputed; it was error for the jury to permit evidence on both counts to be offered and submitted to the jury in the instructions of the court. We think the position of cross-appellant is well taken; and we have reached the conclusion that this case should be sent back for another trial, and that it should be reversed on both appeals.

*Reversed and remanded on direct and cross-appeals.*